UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| GILBERT AMARO, § | |
| § | |
| Petitioner, § | |
| VS. § | CIVIL ACTION NO. 2:14-CV-382 |
| § | |
| BRAD LIVINGSTON and § | |
| WILLIAM STEPHENS, § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner Gilbert Amaro is an inmate in the Texas Department of Criminal Justice - Criminal Institutions Division ("TDCJ-CID") and currently is incarcerated at the Clements Unit in Amarillo, Texas. Proceeding *pro se*, petitioner filed this petition pursuant to 28 U.S.C. §§ 2241 and 2254 on August 30, 2014.[1] The underlying conviction which is the subject of the petition is a 2008 Bee County conviction for being a repeat offender in possession of a controlled substance with intent to deliver in a drug free zone. Petitioner claims that his constitutional rights were violated during the trial and appellate proceedings. Respondent filed a motion for summary judgment on November 4, 2014 (D.E. 9) to which Petitioner did not respond. For the reasons set forth below, it is recommended that Respondent's Motion for Summary Judgment be granted and

---

[1] Petitioner stated under penalty of perjury that he placed his petition in the prison mail system on August 30, 2014 and it is considered filed as of that date. *See Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998) and Rule 3, Rules Governing Section 2254 Cases.

Petitioner's Application for Habeas Corpus Relief be dismissed with prejudice. It is further recommended that any request for a Certificate of Appealability be denied.

## JURISDICTION

The court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 and venue is proper in this court because Petitioner was convicted in Bee County, which is located in the Corpus Christi Division of the Southern District of Texas. 28 U.S.C. § 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000).

## BACKGROUND

**A. Factual Background**

The Thirteenth Court of Appeals summarized the facts in Petitioner's case:

On February 12, 2008 at approximately 11:00 a.m., Beeville police officer Michael Willow was dispatched to a 9-1-1 call from the Esquire Motel in Bee County, Texas; the call was for "shots fired." Upon arriving at the motel, he saw Regan Scott, an assistant police chief, tending to Jesse Martinez, who had been wounded by a shotgun blast and was lying in the parking lot. Officer Willow saw Amaro, who had a gunshot wound to the abdomen, lying across the threshold of the door to room 118. A shotgun and a nine-millimeter Ruger were within Amaro's reach, and spent casings from both weapons were found in the doorway of room 118.

When Officer Willow arrived at room 118, Lieutenant Jefferson of the Beeville police department was standing outside the room tending to Amaro and told Officer Willow that room 118 had not been secured. Officer Willow entered the room in order to perform a "clearance" of the room, i.e., to check for other suspects possibly armed in the room who could have been involved in the shooting, thereby protecting the safety of others at the scene. After Amaro was taken to the hospital, Officer Willow obtained a search warrant for room 118. He and others searched the room and recovered the following: (1) clear cellophane baggies with white residue inside; (2) four digital scales; (3) seven cellular phones; (4) a cell phone case containing $330.00; (5) a wallet with $35.00; (6) a smoking pipe with a small baggie of marihuana; (7) batteries; (8) baking soda; (9) a switchblade knife with a white powdery substance on the tip; and (10) 1.66 grams of cocaine. A portion of the cocaine was discovered in a heating vent. The only

working cell phone, the wallet, the cell phone case with the money, and one of the recovered baggies of cocaine were found in the night stand by the bed. The cell phone had Amaro's mother's phone number listed as "Mom." The search of the motel room also turned up an IRS W-2 form with Amaro's wages and earnings and men's coats hanging behind the door.

Yvette Cruz, the motel's manager, testified that Amaro checked into the motel with his girlfriend, Zenaida Esparza, in November 2007. The motel room was rented in Amaro's name, and he initially paid on a daily basis but later began paying on a weekly basis. Amaro and Esparza stayed in three different rooms from November to February, and they were in room 118 on February 12, 2008. Cruz testified that Amaro made a payment for the motel room on February 8, 2008.

Esparza testified that Amaro left the motel room on February 9, 2008. She stated that she allowed Richard Guerra, her drug dealer, to use her residence to "break up" and "bag" cocaine and that she allowed him to leave his scales and baggies at her residence when he went to make a drug delivery. Esparza contacted Amaro on February 12 and asked him to take her to do some laundry. She testified that before he came to pick her up, she hid all the scales, baggies, and cocaine in the top dresser drawer to prevent Amaro from seeing them. She had no knowledge of the cocaine hidden in the heating vent but stated that the shotgun found in the motel room belonged to Amaro and that he needed it for protection. Esparza testified that soon after Amaro arrived to pick her up, Martinez knocked on the door and asked for Amaro. Amaro pushed her away, and she ran to her brother's motel room at the Esquire Motel and called 9-1-1. While in her brother's motel room, she heard gunshots.

Amaro's sister, Gina Guzman, testified that Amaro stayed at his parent's house on February 9, 2008. She stated that Amaro showed up at her house on the evening of February 10, looked to see what was wrong with her refrigerator and spent the night at her house. On February 11, Guzman left for work around 7:40 a.m. Amaro did some work at Guzman's house and spent the night of February 11th there. Guzman's testimony established Amaro's presence at her house on February 10 and for some of the following day, but Guzman left for work at 7:40 a.m. and returned from work at approximately 6:30 p.m. There was evidence that some work had been performed by Amaro at the Guzman residence while Guzman was at work, but there is no evidence in the record conclusively establishing his whereabouts for the entire day.

*Amaro v. State*, No. 13-08-585-CR (Tex. App. – Corpus Christi 2009, no pet.)(located

herein at D.E. 11-3).

B.  **Procedural Background**

Petitioner was tried by a jury and found guilty on October 15, 2008.  The court sentenced him to 50 years in TDCJ-CID.  *Ex Parte Amaro*, WR-76,034-01, Event Date: 06/20/2011, at 72-74 (D.E. 11-23 at 76-78).  Petitioner filed a direct appeal and his conviction was affirmed by the Thirteenth Court of Appeals on July 2, 2009.  *Amaro*, No. 13-08-585-CR (D.E. 11-3).

On May 24, 2011 Petitioner filed an application for habeas relief in state court, asserting that after his conviction was affirmed, his attorney failed to inform him that he could file a petition for discretionary review (PDR) on his own behalf with the Texas Court of Criminal Appeals.  For relief sought, Petitioner asked to file an out-of-time PDR.  *Ex Parte Amaro*, WR-76,034-01, Event Date: 06/20/2011 at 2-29 ( D.E. 11-23 at 6-33).  On June 17, 2011 the trial court entered findings and a recommendation that Petitioner's writ should be denied.  *Id.* at 75 (D.E. 11-23 at 79).  The Texas Court of Criminal Appeals remanded the application with instructions to the trial court to obtain additional evidence and issue supplemental findings of fact and conclusions of law.  *Ex Parte Amaro*, WR-76,034-01, Event Date 08/24/2011 (D.E. 11-22).

The trial court ordered Petitioner's appellate attorney to file an affidavit addressing Petitioner's allegations and the attorney did so, along with copies of correspondence between the attorney and Petitioner.  After reviewing the affidavit and documents, the trial court entered findings of facts and concluded that Petitioner's attorney notified Petitioner that his conviction was affirmed by the court of appeals, provided Petitioner a copy of the opinion, and advised Petitioner of his right to file a *pro*

*se* PDR. *Ex Parte Amaro*, WR-76,034-01, Event Date: 10/21/2011 at 2-25 (D.E. 11-21 at 6-29). On November 9, 2011 the Texas Court of Criminal Appeals denied Petitioner's application without written order on the findings of the trial court. Id. at "Action Taken" page (D.E. 11-21 at 2).

Petitioner filed another state habeas application on May 5, 2014. *Ex Parte Amaro*, WR-76,034-03 at 2-18 (D.E. 11-15 at 5-21). The Texas Court of Criminal Appeals denied the application without written order on August 20, 2014. *Id.* at "Action Taken" page (D.E. 11-16).

Petitioner filed his application in federal court on August 30, 2014 and makes the following arguments: (1) There was no evidence to support his conviction; (2) the trial court and the Texas Court of Criminal Appeals were biased against him and (3) he was denied counsel to help with his post-conviction motions. Respondent, in his motion for summary judgment, argues that Petitioner's cause of action is barred by the statute of limitations. Respondent concedes that the petition is not second or successive but reserves the right to raise exhaustion and procedural default defenses if the Court does not grant his motion for summary judgment.

## APPLICABLE LAW

### A.  Statute of Limitations

Respondent argues that petitioner's application for habeas corpus was filed outside the one-year limitation period set by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). Regarding the deadline for filing an application for writ of habeas corpus, the statute provides:

(d)(1) A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of --

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or law of the United States is removed, if the applicant  was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244.  Petitioner filed his current application for writ of habeas corpus after the effective date of the AEDPA and so is subject to its provisions. *Lindh v. Murphy*, 521 U.S. 320 (1997).

Petitioner's conviction became final on August 3, 2009, which was thirty days after his conviction was affirmed by the Thirteenth Court of Appeals.  Tex. R. App. Proc. 68.2; *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003).  He had one year from that date, or until August 3, 2010, to file his federal petition.  He did not file it until August 30, 2014, more than four years too late.

Under the statute, the time during which a properly filed application for state court collateral review is pending shall not be counted toward any period of limitation.  28 U.S.C. § 2244(d)(2).  *See also Coleman v. Johnson*, 184 F.3d 398 (5th Cir. 1999)

(petitioner entitled to equitable tolling from the time he filed his state habeas application until it was denied).  Petitioner filed his first state application on May 24, 2011.  Because the petition was filed after the limitations period had expired, it did not toll the limitations period.  *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

Nor has Petitioner shown that he is entitled to equitable tolling.  "'The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable.'"  *United States v. Petty*, 530 F.3d 361, 364 (5th Cir. 2008)(quoting *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000)(per curiam)).  The AEDPA one-year limitations period is not jurisdictional and is subject to equitable tolling at the discretion of the district court.  *Id.* (citing *United States v. Wynn*, 292 F.3d 226, 229-230 (5th Cir. 2002)).

Equitable tolling is permissible only in "rare and exceptional" circumstances.  *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998).  A prisoner proceeding *pro se* is not a "rare and exceptional" circumstance because it is typical of those bringing § 2254 claims.  *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000).

Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.  Excusable neglect does not support equitable tolling.  *Coleman*, 184 F.3d  at 402.  A petitioner seeking to have the AEDPA limitations period tolled must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in the way of his timely filing his habeas petition.  *Lawrence v. Florida*, 549 U.S. 327, 336 (2007).  Petitioner has offered neither argument nor evidence

to show that he is entitled to equitable tolling of the statute of limitations and nothing in the record indicates that the deadline should be extended. Accordingly, his federal habeas application is barred by the statute of limitations and should be dismissed with prejudice.

**B. Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed. See *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may sua sponte rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. Daniel*, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree

with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

A slightly different standard applies when the claims are dismissed on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S.Ct. at 1604 (emphasis added).

In Petitioner's case, it is recommended that his claims be dismissed on procedural grounds. Reasonable jurists would not find it debatable that Petitioner's claims are time-barred. Therefore it is further recommended that any request for a COA be denied because he has not made the necessary showing for issuance of a COA.

## RECOMMENDATION

It is respectfully recommended that Respondent's motion for summary judgment (D.E. 9) be granted. Petitioner's application for habeas corpus relief should be dismissed with prejudice because it is time-barred. It is further recommended that a Certificate of Appealability be denied.

Respectfully submitted this 4th day of March, 2015.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).